# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  Case No. 6:24-cr-40-RBD-EJK

KAREAM AKTON MOORE
_____

## MEMORANDUM OPINION

The Court recently sentenced Defendant Kaream Akton Moore to five years in prison. (Docs. 91, 92, 93, 96.) This Order memorializes the Court's oral pronouncements.

Mr. Moore is a homeless man who was living in a tent in the woods behind an apartment complex. While doing some odd jobs for one of the residents, Mr. Moore was approached by a stranger, Tyrone Green, who offered him $30 to ride his bicycle to drop off a package that contained drugs. For that, Mr. Moore is going to spend the next five years of his life behind bars.

Mr. Moore played the most minor of minor roles in this conspiracy managed by Green—who has not been arrested. Mr. Moore did not know Green, and there is no evidence that he owned a phone, made any phone calls, arranged meetings, discussed drug type, quantity, or value, or did anything else in the conspiracy. Other than the fact that the package contained drugs, Mr. Moore had no other knowledge about the drugs—the type or the weight—or the conspirators. He was

not even a bottom-rung street-level courier who delivered drugs for Green regularly over the months the conspiracy took place. Rather, Mr. Moore delivered one package—one time—on his bike and got $30 in return. (*See* Docs. 82, 83, 89.) But despite his low level of culpability, the minimum mandatory sentence for his crime is sixty months' imprisonment. *See* 21 U.S.C. § 841(b)(1)(B).

Mr. Moore knew, of course, that the bag he was delivering on his bicycle contained drugs. His awareness stemmed from the fact that he had been a drug user since the age of thirteen and had a daily crack-cocaine addiction for the last decade. (Doc. 82, PSR, ¶¶ 81–82.) As a consequence of his longstanding drug problem, his criminal history is littered with petty crimes. (*Id.* ¶¶ 53–64.) And while in some circles, it is popular to chalk substance abuse up to flawed character and lack of willpower, for at least a century, the courts have recognized it for what it is: a serious mental illness. *See Linder v. United States*, 268 U.S. 5, 18 (1925). Of course, substance abuse does not excuse criminal conduct, but it does provide data for the sentencing calculus to assess both culpability as well as equitable consequences. And these consequences are not equitable for the crime.

Passing laws setting mandatory minimum sentences is in the purview of the Legislative Branch. The exercise of prosecutorial discretion is in the purview of the Executive Branch. Yet the district judge, as part of a here-powerless Judicial Branch, is obliged to consign this man to federal prison for five long

years.[1]

Mr. Moore needs substance abuse treatment, not a long and destructive prison sentence. But Mr. Moore is invisible in our society and our criminal justice system. He's homeless and won't be missed. Barely a speed bump on the highway of judicial efficiency. But which pillar of sentencing will be advanced by dispatching Mr. Moore to federal prison for five years at great expense to the taxpayers? Retribution? For a $30 bike ride—hardly. Rehabilitation? Mr. Moore is a longtime drug addict that a stint in prison likely won't cure. Deterrence? Will another drug addict turn down the certain fix that a $30 delivery will buy because of Mr. Moore's draconian sentence? Color me skeptical.[2] Incapacitation? Mr. Moore will be off the streets, that's for sure. But absent intensive substance abuse treatment, that may not be the best of bargains for $30,000.00 a year of the taxpayer's money—or the collective conscience.

Much ink has been spilled on how mandatory minimums are inherently flawed, encroach on the separation of powers, and rob judges of the means to

---

[1] As Judge John Gleeson eloquently put it, "Sentencing is not a science, and I don't pretend to be better than anyone else at assimilating these and the numerous other factors, both aggravating and mitigating, that legitimately bear on an appropriate sentence. But I try my best to do just that, and by doing so to do justice for the individual before me and for our community. . . . The mandatory minimum sentence in this case supplanted any effort to do justice . . . ." *United States v. Vasquez*, No. 09-CR-259, 2010 WL 1257359, at *5 (E.D.N.Y. Mar. 30, 2010).

[2] *See, e.g.*, Lauryn Saxe Walker & Briana Mezuk, *Mandatory Minimum Sentencing Policies & Cocaine Use in the U.S., 1985–2013*, BMC INT'L HEALTH & HUMAN RIGHTS (2018) (concluding that harsher penalties for crack did not result in decreased crack use).

impose fair sentences.[3] And when the Legislature's failures collide with the Executive's, we are all tarnished by the result. In this case, the prosecution has done an end-run around equity, significantly overplayed its hand, and failed to exercise its prosecutorial discretion to allow the imposition of a just sentence. There once was a concept of proportionality in criminal sentencing—the quaint notion there should be some relationship between the offender's culpability and the punishment. *See generally Harmelin v. Michigan*, 501 U.S. 957 (1991). A five-year mandatory minimum sentence for the facts of this situation is so wrong that the charging decision made here—and the prosecutor's insistence that the sentence is just—is difficult to reconcile with the concept of fitting the time to the crime.

There is certainly no room in this hamstrung sentencing "calculus" for justice tempered with mercy. Little wonder the public's confidence in the maxim "equal justice under the law" is at an all-time low. As defense counsel so ably points out,[4] the "tired refrain . . . that the United States system of justice is the best

---

[3] For instance, Dr. Ashley Nellis has written helpfully and exhaustively on the subject. *See* Ashley Nellis, *How Mandatory Minimums Perpetuate Mass Incarceration & What to Do About It*, THE SENTENCING PROJECT (Feb. 14, 2024), https://www.sentencingproject.org/fact-sheet/how-mandatory-minimums-perpetuate-mass-incarceration-and-what-to-do-about-it; *see also* Kieran Riley, *Trial by Legislature: Why Statutory Mandatory Minimum Sentences Violate the Separation of Powers Doctrine*, 19 B.U. PUB. INT. L.J. 285 (2010); Karen Lutjen, *Culpability & Sentencing Under Mandatory Minimums & the Federal Sentencing Guidelines: The Punishment No Longer Fits the Criminal*, 10 NOTRE DAME J.L. ETHICS & PUB. POL'Y 389 (1996); Gary T. Lowenthal, *Mandatory Sentencing Laws: Undermining the Effectiveness of Determinate Sentencing Reform*, 81 CAL. L. REV. 61 (1993).

[4] The Court commends Mr. Moore's counsel Fritz Scheller, Esq. and his impassioned defense.

in the world," while a comforting balm, is nothing but an illusion so long as that system continues to "perpetuate sentences that are anything but just." (Doc. 85, p. 15 n.11.) For practical purposes, Mr. Moore's prospects for relief from the Legislative or Executive branches are zero.[5] Mr. Moore's prospects for relief on appeal of his unjust sentence are equally dismal. *See generally Ewing v. California*, 538 U.S. 11 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Rummel v. Estelle*, 445 U.S. 263 (1980); *United States v. Angelos*, 433 F.3d 738 (10th Cir. 2006), *cert. denied*, 549 U.S. 1077 (2006). The injustice rankles.

This Court is no apologist for the importation and distribution of fentanyl. The Undersigned has presided over too many cases where families have lost loved ones because of fentanyl and has sentenced many drug dealers to long stretches of federal prison time for distributing that poison into the community. Fentanyl is a scourge on society that brings death and destruction in its wake. Nothing about the Court's reticence to impose this sentence should be read to suggest otherwise. But as Emerson pointed out, "a foolish consistency is the hobgoblin of little minds."[6] Crediting the motive, the Congress of the United States likely acted with good intent in setting minimum mandatory sentences. But in the application, to

---

[5] Memorandum from the Off. of the Att'y Gen., Dep't Charging & Sent'g Pol'y (May 10, 2017), https://www.justice.gov/opa/press-release/file/965896/download.
[6] Ralph Waldo Emerson, *Self-Reliance*, COLLECTED ESSAYS, FIRST SERIES (1841).

5

strip the sentencing judge of the discretion to actually do justice and impose a sentence that is "sufficient but not greater than necessary" makes a mockery of the notion of separation of powers and ignores the experience and expertise of those constitutionally charged with the responsibility to apply the law to each defendant as an individual.

There is no more important part of a judge's job than criminal sentencing. No responsibility is heavier, and no consequences are more impactful to the defendant, the victims, their respective families, and the people the system is designed to serve. The judge is shouldered with a duty that can't be delegated to get it right. And this ain't right.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Kaream Akton Moore is committed to the Bureau of Prisons to be imprisoned for a term of sixty months, plus a four-year term of supervised release, both of which are mandatory minimum sentences. This sentence is unnecessarily long, unjust, and does not meet the statutory purposes of sentencing. But the Court is bound to follow the law until wisdom and common sense prevail. Unfortunately for Mr. Moore, that day likely will not arrive in time for him.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 6, 2024.



ROY B. DALTON, JR.
United States District Judge

Copies:
Megan Mann
Roger Handberg